**Eufrasia CORONA–PALOMERA, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Antonio CORONA–CRUZ, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 80–7616, 80–7617.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1981.

Decided Nov. 19, 1981.

[was] within his jurisdiction to make . . . ." *Id.* The same is true of the BLM's decision to await

completion of the plan here.

Before ANDERSON and POOLE, Circuit Judges, and EAST,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

On this consolidated appeal, petitioners Eufrasia Corona-Palomera and Antonio Corona-Cruz appeal an order of the Board of Immigration Appeals dismissing their appeals from an Immigration Judge's finding of deportability under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2). Jurisdiction is founded on section 106 of the Act, 8 U.S.C. § 1105a.

## I. BACKGROUND

The facts giving rise to these consolidated appeals are identical in material respects. Both petitioners were found deportable for entry into the United States without inspection in violation of section 241(a)(2) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1251(a)(2). At their deportation hearings, the petitioners admitted their true names and stipulated that the orders to show cause related to them; however, when confronted with questions regarding their nationality, places of birth and dates of birth, they claimed Fifth Amendment privileges and remained silent. At that point in both hearings, the Government offered and the Immigration Judge accepted into evidence properly authenticated [1] Mexican birth certificates recording the births of individuals with names identical to the petitioners. The petitioners continued their silence in response to questions concerning whether the birth certificates related to them. The Government presented no further evidence. Deciding that the birth certificates related to petitioners through name identity and apparent age identity, the Immigration Judge found that the Government had presented a prima facie case of alienage. Consequently, the Im-

Erica Hahn, Los Angeles, Cal., for petitioners.

Lawrence B. Gotlieb, Asst. U. S. Atty., Los Angeles, Cal., argued, for respondent; James R. Sullivan, Asst. U. S. Atty., Los Angeles, Cal., on brief.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The certificates were admitted in accordance with 8 C.F.R. § 287.6.

migration Judge shifted the burden to petitioners to present evidence of the time, place and manner of their entry into the United States as provided in section 291 of the Act, 8 U.S.C. § 1361.[2] When petitioners came forward with no such evidence, the Immigration Judge concluded that the facts of deportability had been shown by clear, convincing and unequivocal evidence as required by *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), and codified in 8 C.F.R. § 242.14(a). This finding was subsequently affirmed by the Board of Immigration Appeals.

On this review, we must determine whether the deportation order is supported by reasonable, substantial, and probative evidence on the record considered as a whole.[3] *Trias-Hernandez v. INS*, 528 F.2d 366, 370 (9th Cir. 1975); *Lavoie v. INS*, 418 F.2d 732, 735 (9th Cir. 1969), *cert. denied*, 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1970); 8 U.S.C. § 1105a(a)(4). Petitioners argue that the evidence presented at the deportation hearings was insufficient to support the Immigration Judge's findings of deportability because: (1) there was no evidence that the birth certificates related to petitioners; (2) the Immigration Judge improperly took "administrative notice" of the petitioners' apparent ages; and (3) the Immigration Judge should not be allowed to take adverse inferences from the silence of petitioners. Our review of the record and the applicable case law makes it necessary to address only the first contention. By doing so, we affirm.

## II. DISCUSSION

Petitioners do not contest the admissibility of the birth certificates.[4] They do argue that there was insufficient evidence at their hearings to show that the birth certificates related to them. They further argue that without this critical link, the Government failed to make out a prima facie case of alienage and, therefore, they had no burden to produce evidence of the time, place, and manner of their entry pursuant to 8 U.S.C. § 1361. We disagree.

At their hearings, both petitioners admitted their true names. The birth certificates that were admitted as exhibits at both hearings recorded the Mexican births of individuals possessing petitioners' identical names. Identity of names is sufficient to prove identity of persons where no effort is made to rebut such proof. *United States v. Rebon-Delgado*, 467 F.2d 11, 13 (9th Cir. 1972) (involving the admissibility of "certain documents from the official file of the Immigration and Naturalization Service bearing his name"); *Chung Young Chew v. Boyd*, 309 F.2d 857, 867 (9th Cir. 1962) (involving proof of a prior felony conviction as ground for deportation); *Pasterchik v. United States*, 400 F.2d 696, 701 (9th Cir. 1968), *cert. denied*, 395 U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770 (1969) (involving proof

---

**2.** In deportation proceedings involving charges of entry without inspection, the Government must sustain the initial burden of establishing a prima facie case of alienage. *Trias-Hernandez v. INS*, 528 F.2d 366 (9th Cir. 1975); *Berahmand v. INS*, 549 F.2d 1343 (9th Cir. 1977). Once alienage is established, the presumption raised by 8 U.S.C. § 1361 arises. Section 1361 provides, in pertinent part:

"In any deportation proceeding under Part V of this subchapter [8 U.S.C. §§ 1251 et seq.] against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States .... If such burden of proof is not sustained, such person shall be presumed to be in the United States in violation of law."

*See also* C. Gordon and H. Rosenfield, *Immigration Law and Procedure* (1981), § 5.10b at 5–118.

**3.** There is considerable discussion in the briefs of both parties as to the proper standard of review applicable to this court on this appeal. We agree with respondents that the law is clear on this point: The court's jurisdiction to review deportation orders is rooted in 8 U.S.C. § 1105a(a)(4):

"[E]xcept as provided in clause (B) of paragraph (5) of this subsection, the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive."

*See Trias-Hernandez v. INS*, 528 F.2d 366, 370 (9th Cir. 1975).

**4.** *See note 5 infra.*

of a prior conviction to support criminal charges of transportation of firearms by one convicted of a felony). *See* C. Gordon and H. Rosenfield, *Immigration Law and Procedure* (1981), § 5.10c, n. 39 at 5–125.

Petitioners attempt to distinguish *Rebon-Delgado* by directing our attention to "other corroborative evidence" that was available to the trial court in that case which tended to link the admitted documents to Rebon-Delgado. The unequivocal language of the opinion, however, makes no reference to such corroborative evidence on the issue of admissibility of the documents by name identity. The proposition relied upon by this court in *Rebon-Delgado* is clearly that name identity alone is sufficient to prove identity of persons in the absence of probative rebuttal evidence.

It should be observed that our disposition of this issue in *Rebon-Delgado* followed our prior statement of the same proposition in the *Chew* case. *Chew* involved the issue of admissibility of a prior conviction record during a deportation hearing in which the conviction provided the grounds for deportation under section 241(a)(11) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1251(a)(11). Although this court held the document inadmissible for lack of proper authentication, we went on to find that, had the document been properly authenticated, the identity of names was sufficient to prove that Chew was the person named in the conviction record where no effort was made to rebut such proof.[5] Petitioners attempt to persuade us that *Chew* is inapplicable to these cases because in *Chew* there was a greater statistical probability of the identity of person and name since the conviction records were drawn from a limited pool of individuals consisting only of the population of the prison wherein Chew was incarcerated. This argument seeks to establish without documentation that the probability of actual identity of person and name in *Chew* was greater than in these cases where the pool of names is drawn from the purportedly larger population in Mexico. Petitioners produced no evidence at their hearings (nor do they so argue on this appeal) to support this argument. Even if it could be demonstrated that such probabilities do in fact significantly differ, we refuse to confine the presumption of name and person identity to the vagaries of statistical probability.

We find additional support for the proposition that identity of names sufficiently links a document to a person in *Pasterchik v. United States, supra.* In that case, proof of a conviction of a crime punishable by imprisonment for a term exceeding one year was one of the elements of the Government's case against Pasterchik. The Government proved this element by the introduction of an exemplified copy of a Montana judgment of conviction of one "Michael Pasterchik." Citing *Chew* and other cases supporting the same proposition (*see Bayless v. United States*, 381 F.2d 67, 74 (9th Cir. 1967), and *Smith v. United States*, 92 F.2d 460 (9th Cir. 1937)), this court held that identity of Pasterchik's name with the name in the conviction judgment was sufficient to prove that Pasterchik had been the person so convicted in the absence of evidence to the contrary. In *Pasterchik*, the Government bore the burden of proving each element of its case beyond a reasonable doubt. *See United States v. Arias*, 575 F.2d 253 (9th Cir. 1978), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). In deportation proceedings, the Government bears a less demanding burden of proving the facts as grounds for deportation by clear, convincing and unequivocal evidence. *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362. If name identity was sufficient in *Pasterchik* to prove that a prior

---

**5.** It should be reiterated that petitioners have not preserved an admissibility argument upon appeal. We must therefore assume that the birth certificates were admitted under circumstances that comport with fundamental fairness. *Trias-Hernandez v. INS*, 528 F.2d 366, 369 (9th Cir. 1975); *Martin-Mendoza v. INS*, 499 F.2d 918 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975). Although *Rebon-Delgado* and *Chew* are cases affirming the admissibility of documentary evidence on the basis of name identity, the principle enunciated in these cases sufficiently justifies the Immigration Judge's finding that the birth certificates related to the petitioners in the instant cases.

conviction related to a defendant in criminal proceedings, *a fortiori* it is sufficient to prove that the birth certificates related to Corona-Palomera and Corona-Cruz. Therefore, the Immigration Judge's finding that the birth certificates related to petitioners is supported by reasonable, substantial and probative evidence.[6] 8 U.S.C. § 1105a(a)(4).

Evidence of foreign birth gives rise to a presumption that the person so born is an alien, *United States ex rel. Rongetti v. Neely,* 207 F.2d 281, 284 (7th Cir. 1953); *Barilla v. Uhl,* 27 F.Supp. 746 (S.D. N.Y.1939), *affd per curiam* 108 F.2d 1021 (2d Cir. 1940); *Minneapolis v. Reum,* 56 F. 576 (8th Cir. 1893); (*see also Matter of Tijerina-Villarreal,* 13 I. & N. Dec. 327, 330 (1969), and *Matter of A___M___,* 7 I. & N. Dec. 332, 336 (1956)), and it is presumed that alienage continues until the contrary is shown. *Cordon de Ruano v. INS,* 554 F.2d 944, 947 (9th Cir. 1977); *Farrell v. United States,* 381 F.2d 368, 369 (9th Cir.), *cert. denied,* 389 U.S. 963, 88 S.Ct. 349, 19 L.Ed.2d 377 (1967). It was therefore proper for the Immigration Judge to have shifted the burden to petitioners for them to demonstrate the time, place, and manner of their entry into the United States per 8 U.S.C. § 1361. At that point, the additional presumption of illegal entry was in existence by virtue of § 1361 and it remained unrebutted. *Cabral-Avila v. INS,* 589 F.2d 957, 959 (9th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979). *Accord, Tejeda-Mata v. INS,* 626 F.2d 721, 725 (9th Cir. 1980).

Based upon the foregoing, it is our view that the record contains reasonable, substantial, and probative evidence to support the Immigration Judge's determination of deportability.

AFFIRMED.

**6.** Since we find that name identity sufficiently links the petitioners to the birth certificates, it is unnecessary to discuss petitioners' contentions with the Immigration Judge's "administrative notice" of the petitioners' ages or the possibility that he took adverse inferences from petitioners' silence to establish such a link.